**Richard F. HARRINGTON,**
**Plaintiff–Appellant,**

v.

**AETNA–BEARING COMPANY, a wholly-owned subsidiary of Katy Industries, Incorporated, and Katy Industries, Incorporated, Defendants–Appellees.**

No. 90–1440.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 7, 1990.

Decided Jan. 7, 1991.

Thomas R. Meites, Michael M. Mulder, Laurie Wardell, Meites, Frackman & Mulder; Chicago, Ill., for plaintiff-appellant.

Michael A. Reiter, Lori A. Goldstein, Holleb & Coff, Chicago, Ill., for defendants-appellees.

Before BAUER, Chief Judge, and POSNER and RIPPLE, Circuit Judges.

POSNER, Circuit Judge.

The Age Discrimination in Employment Act forbids an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). We must decide whether the complaint in this unusual, perhaps unique, case states a claim of discrimination under the Act. Thinking not, the district judge dismissed the suit. 729 F.Supp. 1217 (N.D.Ill.1990).

In 1971 the plaintiff, Richard F. Harrington, became at the age of 53 the president and chief executive officer of Aetna–Bearing Company, one of the defendants. The other defendant is Aetna's parent, Katy Industries. Why Katy was joined is a mystery to us—there is no suggestion that it had any dealings with Harrington, or that there is any other ground for piercing the corporate veil—but it is a mystery with no significance to our decision.

On the day Harrington became president he signed an employment agreement with Aetna that provided that he would be employed until January 1, 1979, at the salary fixed in the contract and that he could be fired only for cause, defined in terms of five specified forms of misconduct, such as gross and willful neglect of duty. The contract also required Aetna, if it sold its business to another company, to condition the sale on the purchaser's assuming Aetna's obligations under the contract with Harrington.

In 1978, the Age Discrimination in Employment Act was amended to raise the minimum mandatory retirement age from 65 to 70. The following year, Harrington's employment contract with Aetna was amended to extend its expiration date "until the Employee [Harrington] reaches age 70," which would be on August 7, 1988, and also to raise his salary. Oddly, the contract was not amended until July 1, 1979, six months after its expiration. (This is one of numerous, but fortunately irrelevant, puzzles in this case, like why Katy was sued along with Aetna. Another puzzle is whom Harrington negotiated the contract with. The only signatures on the contract besides Harrington's are those of lesser officers of Aetna—Harrington's subordinates. But presumably Aetna's board of directors approved the contract.) In 1986, the Age Discrimination in Employment Act was further amended, to eliminate mandatory retirement ages altogether as of January 1, 1987 (but cf. *Aledo–Garcia v. Puerto Rico National Guard Fund, Inc.*, 887 F.2d 354 (1st Cir.1989)), with exceptions (one mentioned below) inapplicable to this case.

Some months before his seventieth birthday, Harrington told Aetna's board that he wanted to continue working after he reached 70 and also wanted the employment agreement extended. Aetna granted the former but refused the latter request. So Harrington's seventieth birthday came and went and he was still on the job but without a contract; he was an employee at will, as apparently he had been for six months in 1979, before the original contract, which had expired, was amended.

Six months after Harrington turned 70 and the contract therefore expired—on February 7, 1989, to be exact—Katy sold Aetna's business, without requiring the purchaser to retain Harrington. He was fired the same day, presumably by the purchaser, although the record is unclear on this point (as on so many others); Harrington attaches no importance to the question. There is no suggestion that he was fired for cause within the meaning of the expired employment contract.

Shortly afterward, and within 300 days after his seventieth birthday, Harrington filed a complaint with the Equal Employment Opportunity Commission, charging that the termination of his employment contract upon his turning 70 violated his rights under the age discrimination law. This lawsuit followed. Although certain corporate officers are excluded from the age discrimination law, 29 U.S.C. § 631(c), the exclusion is of limited scope and we are not told whether it might swallow Harrington. There is a reason we are not told: the exclusion of certain corporate officers is a defense to liability, *Passer v. American Chemical Society*, 701 F.Supp. 1, 2–3 (D.D.C.1988), and not one of those defenses that a defendant can raise by motion rather than by answer, Fed.R.Civ.P. 12(b)—and

the defendants have not yet answered the complaint.

It is important to understand what is not contended in this case. There is no contention that the placing of an age–70 cut-off in the amended employment agreement back in 1979 was an unlawful discrimination on account of age; at that time, persons aged 70 and older were not in the class protected by the age discrimination law. There is no contention that Aetna's refusal in 1988 to extend Harrington's about-to-expire contract was motivated by his age. The omission may reflect statute of limitations concerns. To explain, such a contention would imply that the statute of limitations had started to run on the date of the refusal. *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). If that date was prior to July 21, 1988, the three hundredth day before Harrington filed his complaint with the EEOC, then if the refusal to renew the contract was the discriminatory act, the suit is time-barred. And in all likelihood the refusal *was* prior to that date. We do not know for sure—this is another gap in the record. But the complaint alleges that Harrington requested renewal early in 1988 and was refused, presumably, although not certainly, shortly after the request was made. But the only thing that is important is that Harrington, for whatever reason, does not contend that the refusal to renew the employment contract upon its expiration was an act of discrimination.

He also does not contend that the sale of Aetna's business was motivated, to even the tiniest extent, by a desire to get rid of him. Indeed, there is no contention that at any stage in Aetna's dealings with Harrington the company was trying to get him to retire. Hence cases such as *Karlen v. City Colleges of Chicago*, 837 F.2d 314 (7th Cir.1988), on which Harrington relies, are inapposite; in them, the employer is accused of trying to induce early retirement by penalizing the worker who does not take it. It could be that when Aetna extended the contract to age 70, the lowest mandatory retirement age permitted by the Age Discrimination in Employment Act at that time, it intended to make Harrington retire at that age. But it obviously changed its mind when the Act was amended to forbid mandatory retirement at any age, and it made no move to fire or retire Harrington when the contract expired.

■ Because of all the things the plaintiff does *not* argue, his submission has a Doric simplicity. It is simply this. *Any* contract that has a termination date based on the employee's age—provided only that the age is 40 or more, for persons under 40 are not protected by the age discrimination law—violates the law. It does so because the termination provision discriminates, per se, on account of age. Moreover, the proper—indeed, the mandatory—remedy for the violation is for the court to strike the termination date and so make the contract run (or compute damages as if the contract would run) until the employee dies or furnishes cause, as defined in the contract, for involuntary termination. The basis on which this extraordinary result is urged is that the type of employment contract involved in this case ties benefits explicitly to age. Before he reached 70, Harrington had a guaranteed salary and could be fired only for cause; after he reached 70, he was an employee at will. Age triggered a reduction in his employment rights. Therefore he was discriminated against on account of his age.

■ That is one way of looking at the sequence of events in this case but there is another and, it seems to us, as it seemed to Judge Zagel in the district court, a better way. The employment contract conferred extraordinary benefits on Harrington for a limited time. At first the limitation was expressed in months: the original contract signed in 1971 expired by its terms 87 months after it was signed. When it expired, Harrington was seven years older, and, until the contract was extended, poorer in the sense that once the contract expired he lost the protections that it had given him. But would anyone contend that he was discriminated against on account of age because he was older when the contract expired than when he had signed it? That would be the end of employment con-

tracts. Now suppose the contract had been extended another 87 months. Then it would have expired in 1986, when Harrington was 68 years old. Would that expiration be a violation of the age discrimination law? Term contracts of employment are not illegal because the parties are older when the term is up than they were when it began. An employer does not by signing a term contract with an employee commit itself to employ him forever just because when the term is up he will be 40 or older.

The only thing that makes Harrington's claim plausible is that age is mentioned in the contract. But we cannot see a practical difference between fixing a term of years and fixing the date at which the contract expires, and we see no magic in the fact that the date here was a birthday, and a seventieth one at that. A term must begin on a particular day and end on a particular day. Suppose the amended contract had said that it would expire on January 1, 1989—ten years to the day from the expiration of the original contract. Would anyone argue that the company was guilty of age discrimination if it refused on that day to give Harrington lifetime tenure? Yet that is the implication of his argument. We hesitate to set foot on a path that leads inexorably to a legal conclusion which would as a practical matter abolish employment contracts for employees over the age of 40.

That path is avoided by noting that the contract expired not because Aetna made a judgment that Harrington was too old, but because the contract had a definite term and the term had ended. If any judgment was made that septuagenarians in general or Harrington in particular are (is) too old to work, it was made either when the contract was extended in 1979 to Harrington's seventieth birthday or when in 1988, shortly before its expiration, the company rebuffed his request to extend the contract. Either of those decisions may, for all we know, have been motivated by a belief, which the statute forbids an employer to act on, that chronological age determines capacity for work. But neither of those decisions is challenged in this case. Neither, in all likelihood, could be. Certainly

the first could not be. The decision in 1979, if it was age discrimination, was lawful age discrimination because mandatory retirement at age 70 had not yet been abolished. The decision in 1988 not to extend the contract before it expired may have been motivated by age discrimination too, but if so the statute of limitations has probably run; in any event Harrington has not challenged that decision. All that he is challenging is an event—the expiration of his employment contract—that occurred not by virtue of a contemporaneous judgment by the company but as the consequence of decisions *that he does not challenge* taken in previous years—the decision to extend the contract to age 70 in the first place and the decision not to extend the contract in 1988, before it expired.

The *Ricks* decision is instructive. The plaintiff was a college professor who believed that he had been denied tenure for discriminatory reasons. The denial of tenure resulted in the loss of his job a year later when his employment contract expired. The Supreme Court held that the actionable wrong, the wrong that started the statute of limitations running, was the denial of tenure—that is, the discriminatory action—not the loss of the job which followed as a consequence. It is the same here. The last possibly discriminatory action was the refusal by Aetna to extend the expiration date of the contract. That the contract later expired was a consequence of that decision as well as of the earlier decision to make the contract expire when Harrington was 70. The expiration was not the discriminatory act. It was the playing out of the contract's terms.

If an employer had a practice of giving term employment contracts to its executives and renewing the contracts only for the young executives, it would be guilty of age discrimination. Therefore if Aetna had *refused to extend Harrington's contract* beyond the age of 70 because it thought people over 70 are unreliable, it might well be guilty of age discrimination. If it had fired Harrington when and because he reached 70, or forced him to retire then, the conclusion would be the same. But so far

as appears, the only reason Harrington's job protection expired at the age of 70 is that his contract happened to expire on his seventieth birthday rather than after a fixed number of months or years that might have made the contract expire at very nearly the same time.

The purpose of the Age Discrimination in Employment Act is to protect employees from being discriminated against on account of their age. It is not to provide older employees with job security. *Shager v. Upjohn Co.*, 913 F.2d 398, 401 (7th Cir. 1990). There is nothing to indicate that Aetna decided that Harrington was too old to run the company when he reached 70. It made no move to replace him. Of course it may have been influenced, even coerced, by the age discrimination law; but we do not issue demerits to people for obeying laws. Aetna sold the company a few months later but there is not the ghost of a suggestion that Harrington's age had anything to do with the decision to sell. There was no decision by Aetna to retire him, to fire him, to reduce his compensation, or otherwise to discriminate against him on account of his age—no decision, that is, made when his contract expired. If any such decision was made it was made earlier and is not challenged.

We hope that we shall not be misunderstood as suggesting that the withdrawal of a benefit cannot violate the age discrimination law. If an employer says to an employee that when you reach the age of 70 I am cutting your salary in half, it is no defense that the new salary may be twice as high as the salary of an average worker. But Aetna made no judgment, on August 7, 1988, when Harrington's employment contract expired, that Harrington was too old to be entitled to the protections of the contract. Any such decision was made earlier and, to repeat the tiresome but essential refrain of this opinion, is not challenged.

■ Harrington points out correctly that an employer cannot defend against a charge of age discrimination or any other civil rights violation by showing that the discrimination began before federal law made it unlawful. *Bazemore v. Friday*, 478 U.S. 385, 395, 106 S.Ct. 3000, 3006, 92 L.Ed.2d 315 (1986). Discrimination is a continuing wrong. This would be a pertinent point if Aetna had forced Harrington to retire at the age of 70 and defended its action by reference to a contract made before the age discrimination law had been amended to bar mandatory retirement at 70. Aetna has done neither of these things. And where is the past discrimination here? None is alleged. It is not discrimination to offer an employee a contract that does not last forever. It is not discrimination to offer him a contract that lasts ten years, or until the year 2000, or until his seventieth birthday, provided that at the end of the contractual period you do not fire the person, or subject him to other adverse personnel action, because of his age. The expiration of a contract is not an act of age discrimination.

AFFIRMED

RIPPLE, Circuit Judge, dissenting.

In my view, the district court disposed of this case prematurely. A motion to dismiss for failure to state a cause of action should be granted only when it is clear that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). That standard is hardly satisfied here ... as my brothers' discomfort with the sparseness of the record adequately demonstrates. We ought not retreat into semantical hypertechnicality over what is alleged and what is not alleged in the complaint; permitting the litigation to proceed at least past this initial stage might well shed significant light on the events that precipitated the lawsuit.

At the very least, before affirming this dismissal, it would be prudent to request the views of the EEOC as amicus. Charged with the administration of the statute, that agency might well be able to enlighten us with respect to the applicabili-

ty of congressional age discrimination poli-cy to executive compensation contracts.